IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RANDOLPH JONES, JR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:15-CV-16(MTT) |
| ) | |
| ADVANCED BUREAU OF ) | |
| COLLECTIONS LLP, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

# ORDER

Plaintiff Randolph Jones, Jr. filed this putative class action on behalf of himself and other similarly situated class members. Jones has moved to certify the class. (Doc. 52). The motion is **GRANTED**.

## I.   BACKGROUND

Jones seeks certification under Fed. R. Civ. P. 23(b)(3) of his Fair Debt Collection Practices Act ("FDCPA") claim against Defendants Advanced Bureau of Collections LLP ("Advanced Bureau"), Kenneth M. French, Evelyn L. Trimble, David R. Aldrich, Lee Ann Barrett, Mia H. Ferruzo-O'Brien, and Tammy Patat. (Docs. 52; 52-1 at 2).

Advanced Bureau, a debt collector acting on behalf of Jones's medical provider, mailed Jones a collection letter—the "A Notice"—which Jones received on February 11, 2014. (Docs. 1 ¶¶ 38, 40-41; 1-1 at 2; 53-3 at 42:9-43:5). This letter stated:

> Unless you notify this office within 30 days after receiving this notice that
> you dispute the validity of this debt or any portion thereof, this office will

assume this debt is valid.  If you notify this office within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification.  If you request this office within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

(*Id.*).  Jones alleges that "French, Trimble, Aldrich, Barnett, Ferruzo-O'Brien, and Patat personally designed, implemented, directed, and supervised [Advanced Bureau's] collection practices and policies including the text of and the procedure for use of the Feb. 11th Letter."  (Doc. 1 ¶ 51).

Jones contends that the A Notice violated the FDCPA because it "failed to inform [him] that in order to obtain verification of the alleged debt and/or the identity of the original creditor[,] the request must be 'in writing'" in violation of 15 U.S.C. § 1692e(10) and § 1692g(a)(4)-(5).  (Docs. 1 ¶ 50; 52-1 at 2).  The Defendants disclosed during discovery the names and addresses of 14,989 debtors who received the A Notice between January 23, 2014 and January 22, 2015—the twelve month period before this lawsuit was filed.  (Doc. 54-1 ¶ 5).  After Jones's counsel reviewed the list for duplicates and non-persons, the final list consisted of over 11,500 names.  (Docs. 51-1-51-11; 54-1 ¶ 9).  Jones now proposes the following class definition in his motion to certify the class:

> All persons, within twelve months prior to the date of filing of this action until the date of this Court's Order certifying this class, resided in Georgia and received (1) a form collection letter similar to Plaintiff's collection letter dated February 11, 2014 [Doc. 1-1]; and (2) those persons whose collection letters were sent but were not returned by the postal service as undelivered or undeliverable.

(Doc. 52-1 at 1).[1]

---

[1] The Court notes that Jones proposed a different class definition in his complaint.  (Doc. 1 ¶ 53). Because of information learned in discovery, Jones has modified the proposed class definition in his motion to certify.  The Defendants do not object to this change.  Accordingly, the Court limits its analysis to the proposed class definition in Jones's motion.

## II.     DISCUSSION

### A.     Class Certification Standard

Fed. R. Civ. P. 23 governs the certification and management of class actions in federal courts. To maintain a class action, Rule 23(a) requires the putative class to satisfy four prerequisites, and the class action may proceed only if it is one of the three types identified in Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citation omitted). A plaintiff must also establish the implied requirement of Rule 23 that "the proposed class [be] 'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted). The burden of establishing the propriety of class certification lies with the moving party. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003)). The moving party "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The Court must conduct a "rigorous analysis" to ensure Rule 23's prerequisites are satisfied prior to certifying a class. *Vega*, 564 F.3d at 1266 (citations omitted). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Id.* (internal quotation marks and citations omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

Specifically, Rule 23(a) requires a plaintiff to show:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four prerequisites of Rule 23(a) are commonly referred to as 'numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims.'" *Valley Drug*, 350 F.3d at 1188 (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)).

Jones is pursuing certification under Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**B.   Analysis**

The Defendants oppose class certification on the grounds that the class is not ascertainable; that numerosity, commonality, typicality, and predominance are not satisfied for the same reasons the class is not ascertainable; that Jones and his counsel are inadequate to represent the class; and that a class action is not the superior method of adjudication.[2]

---

[2] Although no party raises the issue of standing, Article III standing is a threshold question in any class action lawsuit; thus, "any analysis of class certification must begin with the issue of standing." *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *Prado–Steiman*, 221 F.3d at 1279-80. To establish Article III standing, Jones must satisfy three requirements: (1) "injury-in-fact"; (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant"; and (3) "that the injury will be redressed by a favorable decision." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (internal quotation marks omitted) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The Eleventh Circuit has very recently addressed the issue of standing in a FDCPA class action concerning a

- 4 -

**1. Ascertainability**

"[A] class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" *Id.* (quoting *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)). Moreover, "[a] plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* at 948.

The Defendants argue ascertainability cannot be established because "there is no evidence of the content of the letters" and "an individual review is required to determine if any mail was returned." (Doc. 58 at 4-6). Specifically, the Defendants contend that "all that has been established is that [Advanced Bureau] has a record of sending out A Notices[;] it does not know if the words 'in writing' were omitted in all letters. … [Jones] merely assumes all A Notices during a certain period were the

---

debt collection letter. *Mahala A. Church v. Accretive Health, Inc.*, __F.3d__, 2016 WL 3611543 (11th Cir. 2016). As explained in *Mahala*, "[a]n injury-in-fact, as required by Article III, may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id.* at *3 (internal quotation marks, citations, and ellipses omitted). The Eleventh Circuit concluded that the debtor-plaintiff had "alleged injury to her statutorily-created right to information pursuant to the FDCPA," and specifically a concrete or "real" injury, "because she did not receive the allegedly required disclosures." *Id.* The Court reasoned that "this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA," and the Plaintiff's allegation of a concrete injury "satisfie[d] the injury-in-fact requirement." *Id.* (footnotes omitted). Likewise, Jones has sufficiently alleged a concrete injury to satisfy the injury-in-fact requirement by alleging his debt collection letter failed to include the words "in writing," as allegedly required by the FDCPA. Further, it is clear that there is "a causal connection between the asserted injury-in-fact and the challenged action of the [D]efendant[s]" and that "the injury will be redressed by a favorable decision." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (internal quotation marks and citations omitted). Accordingly, Jones has satisfied the requirements of Article III standing.

same." (Doc. 58 at 4-5). This is because, according to the Defendants, the last time the A Notices were reviewed by an attorney in 2007, "in writing" was included, but the Defendants claim they do not know when or how those words were removed. (Doc. 58 at 2-3). Jones counters that the evidence establishes that all A Notices sent from January 23, 2014 through February 10, 2015 omitted the words "in writing." (Doc. 67 at 4-6).

      The Defendants' argument is belied by the testimony of Defendant Kenneth French, Advanced Bureau's manager, and Defendant Evelyn Trimble, a senior partner at Advanced Bureau. (Docs. 63 at 9:7-8; 65 at 7:4, 16-17). Trimble testified that the A Notice "is a form notice" and that "[e]very account that comes to [Advanced Bureau] receives that notice. We have no reason to think that a form notice will be changed without the authorization of anyone in the office." (Doc. 65 at 40:3-8). Clearly, then, the form language of all A Notices is the same until the form is changed. French testified that "[n]o one can make any change to any of our letters to our knowledge without the attorney reviewing them first and then instructions from our software people to enable them to go into the Crystal Report and make the change." (Doc. 63 at 31:7-10, 35:6-16). French and Trimble also review the letter before the "software people" make a change. (Docs. 53-2 at 63 at 29:24-30:7, 35:10-11). French testified that the last time the "A Notice" was reviewed by counsel was in 2007 or 2008, and this review showed the A Notice was "in compliance." (Docs. 53-2 at 22:18-24, 27:17-27:2; 63 at 31:21-22). The A Notice was not reviewed again until the service of this action. (Doc. 63 at 31:21-22, 32:3-4). Nevertheless, French and Trimble acknowledged that at some point, "in writing" was deleted from the A Notice, though they claim no one knows how or when it

happened.  (Docs. 53-5 at 9:16-10:4; 63 at 28:18-29:1, 31:23-32:1, 34:13-14; 65 at 38:24-39:23).  They also testified that "in writing" was returned to the A Notice the day the Defendants were served with the lawsuit—February 10, 2015.  (Docs. 53-5 at 9:16-10:4; 63 at 31:23-32:1; 65 at 39:19-23).  Accordingly, given the Defendants' elaborate procedures and the fact that the A Notice was not reviewed pursuant to procedure and changed to add the words "in writing" until they were served, the Defendants cannot deny that, *at the very least*, all A Notices sent between February 11, 2014—the date Jones received his defective A Notice—and February 10, 2015—the date the Defendants were served and changed the A Notice—omitted the words "in writing."

However, the Defendants argue, based on a single letter mailed in October 2013 that included the words "in writing," that the A Notices sent within the 19 day period between January 23, 2014 and the date Jones received his letter could have possibly included the words "in writing."  (Docs. 58 at 2-5; 58-6 at 2).  But they claim they have no evidence showing whether the A Notice was changed during this time, and that evidence is exclusively within the Defendants' control.  Therefore, Defendants' argument is unpersuasive.  Accordingly, given the testimony regarding the Defendants' procedures and the fact that the A Notice was not reviewed and changed until they were served with the lawsuit, Jones has sufficiently shown that those individuals who received the A Notice between January 23, 2014 and February 10, 2015 received the same defective A notice.

Further, the names and addresses of the members in the proposed class are easily ascertainable through an administratively feasible procedure that is useful for identification purposes.  The CEO of the company that Advanced Bureau uses to create

their reports, CollectionWorks, testified that it can generate a report of names and addresses for any time period. (Doc. 60 at 17:2-18:7, 22:13-14, 37:12-13). Indeed, that is how Advanced Bureau was able to provide a 235 page report of names and addresses of debtors who received the A Notice. (Docs. 53-1 at 9:11-22, 12:12-20, 23:2-9; 60 at 17:2-18:7, 30:16-24, 34:11-14).

Accordingly, because Jones has sufficiently demonstrated that the members of his class may be identified in an administratively feasible manner without much, if any, individualized inquiry, Jones has established ascertainability.[3]

### 2. Numerosity, Commonality, Typicality, and Predominance

The Defendants argue that Jones has not established numerosity, commonality, typicality, and predominance because "Jones'[s] argument for [these elements] is based on the same assumption with respect to ascertainability that all letters were the same." (Doc. 58 at 4 n.27). As discussed, Jones has established ascertainability. Further, a class with over 11,500 members is clearly sufficient to satisfy the numerosity requirement. Commonality is also satisfied here because it is sufficiently evident from

---

[3] The Defendants also argue that the class cannot be identified in an administratively feasible manner because "an individual review is required to determine if any mail was returned." (Doc. 58 at 5-6). The Court also finds this argument unpersuasive. To the extent an individual inquiry is required, it will solely be to ascertain whether a letter has been returned. This is not the type of individualized inquiry that amounts to a "series of mini-trials," and the Court does not see any evidence how this would be an unmanageable process. *Karhu*, 621 F. App'x at 949 (citation omitted). Indeed, in her Rule 30(b)(6) deposition, Tammy Patat, who compiled the data of individuals who received A Notices from Advanced Bureau, testified that she was "personally" not aware of any individuals whose A Notices were returned and that, generally speaking, only a small percentage of letters that Advanced Bureau sends are returned. (Doc. 53-4 at 11:18-20, 14:8-10, 15:19-23). The Court also adds that numerous courts in FDCPA actions have certified classes that were defined by individuals who received an allegedly defective letter that was not returned as undeliverable. *See, e.g.*, *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 645 (M.D. Fla. 2015); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 397 (E.D.N.Y. 2013); *Lewis v. ARS Nat'l Servs., Inc.*, 2011 WL 3903092, at *8 (M.D. Ala.); *del Campo v. Am. Corrective Counseling Servs.*, 254 F.R.D. 585, 597 (N.D. Cal. 2008); *Seawell v. Universal Fid. Corp.*, 235 F.R.D. 64, 68 (E.D. Penn. 2006); *Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265, 272 (E.D. Wash. 2001); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 698, 701 (M.D. Fla. 2000); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 359 (N.D. Ill. 1998).

Defendants' description of their procedures and letter-generating system, as well as Trimble's testimony discussed above, that all class members received the same defective A Notice. *See Swanson v. Mid. Am., Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) ("To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter."). Likewise, typicality is satisfied because Jones received the same A Notice that allegedly violated the FDCPA as the class members; thus, Jones's claims and those of the class "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Swanson*, 186 F.R.D. at 668.

Finally, the Court finds that common issues predominate over any "issues that are subject to individualized proof." *Jackson v. Motel G Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (internal quotation marks and citation omitted). Again, Jones's claims, and those of the putative class, are based on the same alleged defect in the same A Notice, which Jones argues violates § 1692e(10) and § 1692g(a)(4)-(5). Further, the Eleventh Circuit assesses FDCPA claims pursuant to the "least sophisticated consumer" standard, which is an objective standard. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). Therefore, there is little to no individualized inquiry. In other words, "[d]etermining whether Defendants are liable is subject to generalized proof and will not be overshadowed by individualized determinations." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 689 (S.D. Fla. 2013).

Accordingly, Jones has sufficiently established numerosity, commonality, typicality, and predominance.

### 3. Adequacy of Representation

The Defendants argue that Jones is an inadequate class representative and that counsel James W. Hurt, Jr., Steven H. Koval, and David Addleton are inadequate to represent the class. (Doc. 58 at 6-16). Under the final Rule 23(a) requirement, the class representatives must show they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement applies to both the named plaintiff and his counsel. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). The adequacy prerequisite "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby*, 513 F.3d at 1323 (quoting *Valley Drug*, 350 F.3d at 1189).

#### a. Whether Jones is an adequate class representative

The Defendants argue that Jones is inadequate to represent the class because (1) he "knows nothing about his case, damages, costs, fees, his attorney's[,] or the proposed class"; and (2) Jones's "interests are in conflict with the class." (Doc. 58 at 6-12). With respect to a class representative's knowledge, the Eleventh Circuit has stated that district courts may properly deny class certification "where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Kilpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987). However, "class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Id.*

at 728.  Further, "[b]ecause the issue of adequate class representation arises in a wide variety of contexts, it would be inappropriate … to establish a standard for general application." *Id.* at 727-28.

Here, the evidence does not show that Jones's knowledge of this lawsuit is inadequate or that he has abdicated his role as class representative to his counsel. Rather, Jones's deposition testimony reveals that he is familiar with the substance of his claims and the allegations in his complaint directly relevant to his claims, has reviewed the entirety of the FDCPA, reviewed the complaint before it was filed and documents sent during class certification discovery, and remains informed about the case through frequent contact with counsel David Addleton.  (Doc. 53-3 at 12:6-11, 14:12-13, 15:17-21, 16:3-8, 22:22-23:1, 24:13-22, 25:8-26:23, 28:24-29:8, 40:2-13).

The Defendants attempt to make much of the fact that Jones stated his knowledge about the class allegations in his complaint came from his counsel and not his "personal knowledge"; that he did not assist his counsel in responding to certain discovery; that he did not know what resources class counsel were devoting to the litigation, counsels' experience, or the compensation the class members could receive; and that he did not know the individual Defendants who worked for Advanced Bureau. (Docs. 53-3 at 12:6-9, 12:19-13:11, 28:10-23, 19:22-25, 20:1-2, 21:5-10, 22:3-10, 26:6-25-28:20, 29:9-11, 31:11-12, 33:6-17, 45:1-25, 46:6-14, 47:18-21, 48:1-25, 49:1-50:3, 51:13-15; 58 at 6-12).  However, the Defendants have not provided the Court with any binding precedent, and the Court is unaware of any, that a class representative is inadequate if his knowledge about the legal nature of his claims and the class comes from his counsel.  Further, Jones's inability to assist his counsel with answering largely

legal discovery requests, his lack of awareness of Advanced Bureau's corporate officers in this lawsuit, or his lack of understanding of his counsels' resources or the class members' potential compensation does not demonstrate he cannot discharge his duties as class representative.

The Court emphasizes that the subject of this lawsuit is a fairly simple one—the absence of two words in a debt collection letter, and, again, that the objective standard through which courts assess FDCPA violations is an exceedingly light one—the least sophisticated consumer standard. Thus, the threshold of the necessary knowledge for a class representative is not high. Again, Jones's deposition testimony demonstrates that he understands the nature of this lawsuit and the statutory rights of the class members he seeks to vindicate and that he is involved in this lawsuit by staying frequently informed through regular communication with Addleton. This is sufficient.

The Defendants also argue that Jones's interests conflict with the class because his counsel are funding the litigation. Again, the inquiry is "whether any *substantial* conflicts of interest exist between the representatives and the class." *Busby*, 513 F.3d at 1323 (emphasis added). The only authority the Defendants cite is *Sandlin* v. *Shapiro & Fishman* in which the district court thinly reasoned that "Plaintiffs' reliance on counsel for … funding leaves great potential for conflict of interest." 168 F.R.D. 662, 668 (M.D. Fla. 1996). Notably, the court in *Sandlin* made this conclusion in conjunction with finding that the plaintiffs were unable to adequately protect the class's interests because of "counsel's past record of behavior involving class action litigation." *Id.* With regard to the latter finding, there is no evidence or suggestion of misbehavior by counsel here. Further, the Court fails to see how attorney funding of this litigation, a common and

appropriate practice, has manifested or could manifest a substantial conflict of interest here between Jones and the class. The Court finds no evidence of any substantial conflict.

Accordingly, Jones has demonstrated he is adequate to serve as class representative.

### b. Whether counsel are adequate to represent the class

The Defendants argue Jones's counsel are inadequate to represent the class because they "refuse to provide discovery/evidence required by Rule 23" and are "at conflict with the class." (Doc. 58 at 12-16).

With respect to the evidence required by Rule 23, the Defendants argue that counsel is inadequate because "Jones and his counsel refuse to provide any evidence supporting a factor that this court must consider"—namely, the resources that counsel will commit to representing the class. (*Id.* at 13). In response to the Defendants' interrogatory asking Jones to "describe with particularity" the resources his counsel will commit to representing the class, the resources already committed to identifying and investigating the claims, and the resources available to counsel, his counsel stated that such information is privileged and that "they have adequate resources to bear the cost of any class notification, depositions, and to see the case through to trial." (Docs. 61 at 5-6; 62 at 9-10). The Defendants did not move to compel further response.

Although Jones's interrogatory response was bare, there is still sufficient evidence for the Court to assess the resources that counsel can commit. As an initial matter, counsel represent that they have sufficient resources to bear the costs of this class action and that the four attorneys and their staff have "dedicate[d] their utmost

efforts to this case." (Doc. 62 at 10). *See Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 289-90 (N.D. Ill. 2014) (finding counsel was adequate under Rule 23(g)(1) and (g)(4) where counsel's fifteen attorneys, fifteen paralegals, and staff were working on the class action concerning the Telephone Consumer Protection Act and where they represented they would "devote sufficient manpower and financial resources to vigorously pursue [the] putative class action"). Clearly, counsel are familiar with the resources required to represent a class in a FDCPA action given that they collectively have been class counsel in sixteen class actions, four of which involved the FDCPA and all of which involved debt. (Docs. 52-3 ¶ 9; 52-4 ¶ 3; 54-1 ¶ 3). The Court concludes that it is apparent from counsels' ability to manage similar suits in the past that they have the expertise and adequate resources to manage this lawsuit as well. *See In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 556 (S.D. Ohio 2005) (reasoning the same). Indeed, as discussed, it does not appear that this case is so complex that it will require the devotion of resources beyond what counsel are apparently capable of providing.

With respect to a purported conflict between counsel and the class, the Defendants cite *Sandlin* again and repeat essentially the same argument they made against Jones as class representative. (Doc. 58 at 15-16). Again, the Court concludes there is no evidence that attorney funding has or will create a conflict of interest with the class, and there is no evidence of any other substantial conflict.[4]

---

[4] The Defendants also argue that counsel are inadequate because they are "improperly using discovery in this case to obtain information for other cases." (Doc. 58 at 14). Apparently, during French's deposition, Koval questioned him at length concerning issues unrelated to this case that were the later subject of a class action counterclaim and third-party complaint filed by Koval, Hurt, and Addleton 30 days after French's deposition. (*Id.*; Docs. 58-1; 58-2). Jones responds that Koval's questions were relevant for pattern and practice evidence under 15 U.S.C. § 1692k(b) and represents that "the class action allegations have been dropped" in the other lawsuit. (Doc. 67 at 10, 11 n.5). Although it does appear that

Finally, the Court finds that counsel have done sufficient work in investigating the potential claims in this action and have sufficient knowledge of the applicable law. *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Accordingly, Jones has established that his counsel will adequately represent the class.

**5. Superiority**

The following factors are useful for determining whether a class action is a superior method:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The focus of this analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (citation omitted). The predominance analysis has a significant impact on the superiority analysis; if common issues predominate over individual issues, then a class action is likely to be a superior vehicle for adjudicating Jones's claims. *Id.* at 1184 (citations omitted).

As discussed, common issues predominate in this case; thus, a class action is likely the superior vehicle for adjudicating Jones's claims. Further, Jones's FDCPA claims raise a single central question, and "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."

---

Koval was conducting discovery on another case in this action, the Court does not see this as an impediment to counsels' adequate representation of this class. This is especially true now that the counterclaim and third-party complaint in the other lawsuit have since been dismissed. (Doc. 58-3).

*Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982). Therefore, these common questions should be resolved in a single forum. Also, the Court is unaware of ongoing litigation against the Defendants by debtors that comprise the proposed class or of any likely difficulties in managing the class.

The Defendants only argue that "a class action is not superior" because: 1) recovery would be de minimis; and 2) recovery would be disproportionate to other costs. (Doc. 58 at 16). With respect to de minimis recovery, Jones does not dispute that recovery for each class member would be between $.08 and $.20, instead of $1,000 in statutory damages plus actual damages and attorney's fees if the class members pursued their claims individually. *See* 15 U.S.C. § 1692k(a); *Hicks v. Client Servs., Inc.*, 257 F.R.D. 699, 700 (S.D. Fla. 2009). The Defendants have cited several cases in which courts have held or discussed that de minimis recovery precluded class certification, but Jones has cited numerous cases in which courts have held de minimis recovery does not defeat class certification. (Docs. 58 at 16-19; 67 at 12-14).

While there is authority supporting both positions, the Court finds more persuasive the authority concluding that de minimis recovery does not preclude class certification. As noted by various courts and acknowledged by the Defendants, de minimis recovery is only a factor to be considered in determining whether to certify a class. *See, e.g., Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). But this factor does not overwhelm Congress's intentions for class actions to be a mechanism for recovery to "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. … A class action solves this

problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (internal quotation marks and citation omitted). This is especially so in a case such as this where the statutory limit for individual recovery is $1,000 (plus any actual damages), and where it is unlikely that individuals who received the defective A Notice would be aware that the absence of two words violated their rights under the FDCPA without a class action. Thus, the Court concludes that the potential de minimis recovery here does not render a class action an inferior method for adjudication.

The Defendants also argue that a class action is not the superior method because the potential amount of recovery is disproportionate to the cost of providing notice and payment to the class. (Doc. 58 at 19-20). Specifically, they argue that while each class member will recover between $.08 and $.20 if it prevails, "the cost of providing notice and payment to each member would be between $3.28 and $3.86." (*Id.*). However, the Court fails to see how this disproportionate cost demonstrates that a class action is not the superior method of adjudication in this case. Indeed, such a conclusion would, in effect, preclude many class actions where recovery would be de minimis. Again, the Court rejects such a position for the reasons already discussed.

Accordingly, the Court finds that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. CONCLUSION

For the foregoing reasons, Jones's motion to certify the class is **GRANTED**. (Doc. 52). It is **ORDERED**:

1. The named Plaintiff Randolph Jones, Jr., is designated as class

    representative of a Rule 23(b)(3) class defined as follows:

    All persons, within twelve months prior to the date of filing of this action until the date of this Court's Order certifying this class, resided in Georgia and received (1) a form collection letter similar to Plaintiff's collection letter dated February 11, 2014 [Doc. 1-1]; and (2) those persons whose collection letters were sent but were not returned by the postal service as undelivered or undeliverable.

2. The class is certified with respect to the following cause of action:

    An FDCPA claim against the Defendants based on their failure to inform the consumer in their A Notice that in order to obtain validation of the alleged debt and/or the name and address of the original creditor, the request must be "in writing" in violation of 15 U.S.C. § 1692e(10) and § 1692g(a)(4)-(5).

3. Pursuant to Rule 23(g), James W. Hurt, Jr., Steven H. Koval, and David F. Addleton are appointed as class counsel.

Within 21 days from the date of this Order, the parties shall file a joint proposal for providing notice to class members. The notice shall comply with the requirements of Rule 23(c)(2)(B). In the event the parties are unable to reach a consensus for providing class members or potential class members with notice, the parties shall submit a single document outlining the areas in which they agree and those in which they do not agree.

**SO ORDERED**, this the 26th day of August, 2016.

                                              S/ Marc T. Treadwell
                                              MARC T. TREADWELL, JUDGE
                                              UNITED STATES DISTRICT COURT